Welcome to the third day of our panel sitting here in Atlanta. Judge Pryor, Judge Kidd, and I are very happy to be here. You're probably familiar with our lighting system. When the yellow light goes on, that means that your time is drawing to a close, so please begin to wrap up. If we take you beyond the red light, don't worry about it. Just keep on going. We have four cases today. We'll start with case number 23-13132, United States v. David Gibson. Ms. Curry. Thank you. Good morning. Jennifer Curry for David Gibson. May it please the Court. Was the Rule 11 colloquially deficient, rendering 922G3 vague and unconstitutional as applied to... I'll start by reviewing some highlights of the record which illustrate the vagueness and the unconstitutionality of this statute. Before you do that, could I ask you one question? Yes, sir. What do you think, putting aside constitutionality for a moment, what do you think the element of this statute is with regards to the drug use and the possession of the firearm? What do you think the temporal requirement is or is not? Because without that, it's sort of hard to understand how you decide the Rule Yes, sir. So tell me what you think. We've said some things about it in the context of addressing a guideline enhancement, but we don't have any direct precedent that I could find saying the elements of this particular subsection of 922G are as follows. Yes, sir. I believe the answer to that is actual danger to the public safety. I think that's where this statute is kind of, is not narrowly tailored. It's, the interpretation has been all over because we haven't decided yet whether someone who is a regular drug user can possess firearms at a separate time, a separate place. In the historical tradition, even the second step of Ruan states, we have to look at disarming those who pose an actual imminent danger to the public. I know, but that, you're bleeding into the constitutional claim. So what is, what are the elements? If I were to completely ignore the Second Amendment just for a moment and just think, what are the elements of this statute? What do you think the temporal hook is between the drug use and the possession of the firearm? I believe it would be the user of the drug rendering him impaired and an actual possession of a firearm rendering him dangerous. At the time of possession? Yes, Your Honor. I believe if someone is sober, that without, if they are sober with a firearm, we don't have that element of danger that we fear with the element of intoxication or impairment. Okay. So not only, not only do you have to have drug use at the time of possession, the drug use has to render you impaired. Yes, Your Honor. That's your view. Okay. Yes, sir. And that is because the language of the statute is the unlawful use of a controlled substance under 802, where we also have the lawful use of some of these controlled substances in Schedules 1 through 5, which render you unable to operate a motor vehicle such as Ambien and the Oxycodone. So you can use them lawfully, but still be prohibited from operating a motor vehicle. But what if you use the controlled substance unlawfully, but have a certain constitution where you're not impaired? Does the statute reach your conduct, putting aside constitutionality? I think that takes us to a different crime of possession of a firearm during the commission of a felony or possession of a drug. But under this statute, I believe... No, no. Police go into a home with a warrant. They find a person smoking a marijuana joint, and he's got a firearm on his lap. But he just started smoking the joint, so he's not under the influence of anything. He's perfectly fine. He could go out and drive an 18-wheeler. It's not an issue. Has he violated the statute? I would argue no, because he doesn't pose a danger or a threat with that firearm. He's still of sound mind. Okay. I got it. Thank you very much. Yes, sir. So, when we look at the record, we start with the actual arrest warrant, where Agent Starr writes that Gibson's prohibited from owning or possessing a firearm as an unlawful user of a drug. The indictment, which serves as notice to the defendant, reads that on or about November 17th of 2022, a very specific date, Gibson, knowing he was an unlawful user of a controlled substance, did knowingly possess a firearm. Then we get into, after following jury selection and beginning... Before beginning opening statements, we start to discuss some of the other pretrial motions, and the court engages in this discussion of what is G3. And the court initially ruled that evidence may be presented to determine whether Gibson used drugs while he possessed a gun, and that the government must prove that Gibson was in possession of a firearm while he was actually using an illegal drug. The government agreed with that. That would be the standard, that he must be a user of drugs at the time he possessed the firearm. The discussion continued, and the court asked for further clarification. Would Gibson have to use the drug the day before and then possess the firearm the next day, or should there be evidence that Gibson's a regular drug user? At that time, the government answered he's a regular drug user, and the court asked for further clarification. So you do not believe you have the burden of proving that he was in possession of a gun while he was shooting up or smoking, and the government answered correct. So the standard changed. The court finally ruled at that point that Gibson could be guilty of the offense even if he was not actually smoking the illegal drug at the exact time he possessed the firearm, that there could be... He could be an unlawful user even if he was doing so in close proximity to the possession of the guns, and the court didn't clarify if that meant space or time, close proximity to the firearm, or time in which he had access to the firearm. We went into the Rule 11 colloquy for the plea, and the government set out the elements that they intended to prove, which included that Gibson was an unlawful user of a controlled substance in close proximity to time he possessed the firearm, and the court asked Gibson, do you understand? And he responded, no, sir. From there, the court defined possession of a firearm using the jury charge of actual and constructive possession, asked Gibson if he understood that, and he said, yes, sir, and the court went into the sentencing range. Gibson then stated, I was not a regular user like that. Rather than stopping the plea and discussing regular user, the court inquired, do you agree that you did use drugs at some point while those guns were there in your house? And Gibson said, yes, and added a joint or two. The court then asked in a different way, what I need to know today is whether you agree that you did at some point use illegal drugs while you had those guns there at your house, and Gibson answered, yes, sir. I filed the motion to withdraw the guilty plea, at which time the court denied it, issuing a written order which addressed our historic traditions, stating that the history of disarming tavern goers while they were consuming pints of intoxicating ale was our historical tradition when we decided to disarm someone, which would be different from the court's prior ruling. Then at the sentencing hearing, the court stated the defendant has pled guilty to using a controlled substance while possessing a firearm. There's a further discussion with the government. The government stated that it would not be illegal for an occasional drug user to possess a firearm, that owning a firearm is illegal for a regular drug user. And the court said, so you don't believe that you have to actually be using the substance while you possess the firearm, and the government said that is correct. So we changed it once again. So we can see the vagueness in the interpretation of G3. The court never settled on an actual definition and what the elements were, and neither did the government. So my argument... But the last colloquy you're talking about is not during the Rule 11. It's during... The sentencing. Or, and there were some comments, too, before Mr. Gibson decided to enter a guilty plea. But at the change of plea hearing, it seems to me pretty clear, whether right or wrong, that the district court thought that if there was unlawful drug use combined with possession, that was enough. Yes, sir. And that would be one instance, which is why the court ruled that that 2021 medical intervention, the NARCAM, was allowed to be presented to a jury to show that one overdose. And then in 2022, when the search warrant was executed, there were guns found within the house. So the court's ruling was, at some point, drugs were used, even if it was just one time. And at that time, there were guns within that home. The indictment charged him with committing the offense when? On November 17, 2022, when the search warrant was executed, at which time the court ruled and the, and Agent Starr testified that Gibson was not impaired. So, Yara, when we look at the history of the statute, I know we've had a lot of cases come through since 2023, including an argument in front of the Supreme Court just this month. And the focus really has been on disarming those who are intoxicated. And the focus has been on drunkards in a lot of cases, even with this court focusing on marijuana. But the 3rd, 5th, 6th, 7th, 8th, 10th, 11th circuits in the Supreme Court really have focused on dangerousness and our history of disarming the mentally ill and disarming those who are impaired, who pose an actual significant risk to the public. And so when we construe G3, the concern is, if we have this one time user, or is it a habitual user? And at what point do we know who to apply the statute to? And in this case, well, let me give you a hypothetical and see what you think about it. So let's use the same date of the offense, November 17th of 2022. On that date, when Mr. Gibson is arrested, he's not impaired. Okay. But in my hypothetical, a week before he was stoned. Didn't know what he was doing, where he was, and he had the firearm at that time. Can he be convicted? If he had the firearm on his person? It did, he did. On his person? In my hypothetical, he did. He carries it around the house all the time. But he's only completely impaired a couple of times that he uses the drugs. The other times he uses enough to get a little high, but he can function. And so the week before he had a lot of drug use, and he was really impaired and unable to do anything, and he had the firearm in his waistband. I would argue that would be, it should be prohibited. I think that is... Even though when he gets arrested, he's perfectly fine. Sure you are. There's no evidence that he was getting high in his home. The evidence was... So does the government have to allege that the illegal possession was on the day that he was out of his mind? I think there would have to be evidence of that, not speculation. And so how does the government know what day he was high? I guess they do not, Your Honor. So they can't prove it. They know he was high, and they know he had the gun because he had the gun all the time, and he admits he has the gun on him all the time. But they don't... And he can't remember the days that he was high, but he knows he was. Sure. Or if there's a report that he was terrorizing the public and he wasn't brainwashing the firearm, waving it around, being a danger to public safety, I guess there would be a reason why law enforcement wasn't contacted that day. Okay. All right. Thank you very much. You've saved your time for rebuttal. Yes, sir. Thank you. I guess on the... I think I don't... I haven't spoken to my colleagues about this, but I presume you just want us to wait for the Supreme Court to rule with regards to the constitutional challenge, because if not, one of you is going to be seeking a re-hearing, depending on what that decision looks like when it comes out. I expected the court to wait for the Hermanni case to be decided. I believe this contributes to the argument that ordinary minds cannot agree on what the statute means and how to construe it. I think that just the record of this case alone, I have the utmost respect for Judge Land. He is not an ordinary mind. He is a very intelligent individual sitting on the bench. And for us to not understand how to interpret this statute, and along with all the other cases that have come through since, I believe there's an argument that this statute is very difficult to apply. And a lot of the challenges are as applied, because the statute seems to be construed on a case-by-case basis of what are the facts of this individual and how do we make it fit to these facts to show that they were committing an illegal act. All right. Thank you. Yes. Thank you. Okay. Mr. Walker. Good morning, Your Honors, and may it please the Court, Stuart Walker for the United States. Good morning. Good morning. Just to start off where you left off, Judge Jordan, is the position of the government that there's no need to wait for the decision in Himani in this case because Himani is considering an as-applied Second Amendment challenge to this statute. But our position is there is no as-applied Second Amendment challenge in this case because of the unconditional entry of the guilty plea. And that's this Court's case is interpreting the Supreme Court's decision in class, which we pointed out in a 28-J and 34-4 letter, which we filed on Monday. So because the unconditional entry of Mr. Gibson's guilty plea waived any as-applied constitutional attack on his statute of conviction, that claim is not in the case. And so nothing that Himani says about that as-applied challenge can have a bearing on the Second Amendment issue that is in this case, which is limited to a facial challenge, which no Court of Appeals has ever accepted, in which the colloquy with my friend on the other side just demonstrated the core prohibition in this statute is plainly consistent with the Second Amendment and the tradition and history of the nation because if you are presently intoxicated and impaired by a controlled substance unlawfully, there's no argument that you can't be dispossessed of that weapon. My friend conceded that, and that's enough to render the facial challenge off the table because under Salerno, a challenge remounting a facial attack has to show there's no set of circumstances in which the statute can be constitutionally applied, and an admission that a presently intoxicated defendant can be dispossessed consistent with the Second Amendment is fatal to the facial challenge. With respect to Rule 11, I think it's imperative that the Court keep in mind the posture in which this appeal comes before the Court, and that is on the denial of a motion to withdraw the guilty plea. That's a decision the Court reviews for discretion. But it's also a claim that the guilty plea was involuntary. It is. Because purportedly, Mr. Gibson was unaware of exactly what the temporal requirement was between the unlawful drug use and the possession of the firearm given the statements and discussion between the Court and the parties in the pretrial proceedings and the change of plea itself. That's right, Your Honor. I would quibble one bit with that. The question is really whether it was knowing, not voluntary. So, under Rule 11B1G, which is the claim about whether he understood the nature of the charge, this Court has said that goes to whether it was a knowing plea. But even though that's the basis of the claim, the decision to deny the motion of withdrawal is still reviewed for abuse of discretion, and this Court has said it can reverse only if that decision was either arbitrary or unreasonable. And I want to explain why Judge Lamb was correct to find that it was neither one of those. Under B1G, the Court's duty at the plea colloquy is to inform the defendant and ensure that the defendant understands the nature of the charge. And what the precedents of this Court say is that with respect to a relatively simple charge, which we contend this is, typically the reading of the indictment will suffice for the defendant to understand. I'm not sure this is, it's worded simply. I'm not sure that it's simple in its application because, well, why don't you tell me what you think the temporal link is between the unlawful use and the possession of the firearm? Your Honor, the Court has three precedents on this, which you rightly acknowledge are not under the statute, not under 922G3, but they're under the sentencing enhancement, which uses identical language. So, I think it would be difficult for the Court to get out from under those cases just by the fact that it wasn't under the statute, because it gave a construction to that, to the same language. And this dates back to 1988, a case called U.S. v. Corona, 849F2nd562, where the Court rejected the idea that the government had to show the actual use of cocaine was at the exact moment he purchased the firearm. So, that's the first precedent establishing that it doesn't have to be coterminous with the possession and the use. So, not presently intoxicating. Then in Bernardine in 1996, 73F3rd1078, the Court said a defendant's unlawful use of a controlled substance must be ongoing and contemporaneous. So, that's the relevant language from the Court's precedent, ongoing and contemporaneous, and it must be done during the time period of the conduct charged. And then the final case is U.S. v. Edmonds, 348F3rd950 from 2003. The government does not have to prove the defendant was under the influence of a controlled substance at the time of his arrest. Instead, the government must show the defendant was an unlawful user of a controlled substance during the same time period of the firearm possession. Now, that's important here because his admissions at the plea colloquy show that he smoked methamphetamine the night before the search was executed and hours later the morning of the search. So, the testimony at one of the pretrial hearings was that a deputy sheriff arrived at the property at 9 a.m. and Mr. Gibson was present at the property and he admitted to law enforcement that day that he had smoked meth just that morning on the day of his arrest for the possession of the firearms. But there was also evidence that gets at whether this was regular or habitual or ongoing or whatever descriptor you want to use, and that was he was found in possession in 2019 of a user amount, and that's important, not a distribution amount, but a user amount of methamphetamine. He pleaded guilty to that possession in 2021. He overdosed on a narcotic in 2021 and had to be essentially revived by the paramedics, and then there was also testimony that his friends were going to testify or did testify to law enforcement officers that he was a regular user of drugs. The district court had all of that in front of it. I understand I'm bleeding over into the factual basis argument under Rule 11b-3. I think they're related to a degree. They certainly are. They certainly are, but if I could go back to the B1G claim, did he understand the nature of the charge? So, he was read the indictment by the prosecutor, and this is at page 14 to 16 at ECF 69, and at the end of that reading of the government's charge against you, Mr. Gibson, yes, sir, and then in addition to reading the indictment, he had the prosecutor read the elements of the offense, which he did. The prosecutor read the four elements of the offense at page 16. Now, right after that, he asked Mr. Gibson, do you understand the elements of the offense? He raised two points of uncertainty, neither one of which went to the element of whether he was an unlawful user of a controlled substance. First, he said, and this is evidence that Mr. Gibson was paying keen attention to what the prosecutor was saying, he said, I disagree that not all the guns have serial numbers. So, when the prosecutor read the indictment, there were 26 firearms. He read through all the serial numbers on all the guns, save three, which he said that didn't have a serial number. Can I go back to the government's proffer for a second? Everything you said about the government's proffer is correct, but he didn't admit in an unqualified way that the proffer was correct. When the district court asked him, do you agree? He said, I agree with some of it, and then they engaged in a discussion about what parts he agreed with and what parts he didn't agree with, and one of the things he said, it may or may not be significant, but he says, I wasn't a regular user like that. That's on page 33 of the sentencing transcript. So, and then we have the language that you quoted where the district court engages him on when he used it and all of that. So, what do we make of the government's proffer with his qualifications attached to it? Well, that's a very important point, which I'm glad you raised. I was going to get there. So, under Rule 11, when you're looking at the factual basis for the plea, this court's precedent says it does not have to be uncontroverted evidence of guilt. That's United States v. Owen, 858 F. 2nd, 1514. Now, why is that important? So, in Owen, you had a husband and wife who were charged with tax fraud, and part of the proffer at the guilty plea was testimony from their accountant that was incriminating, and on appeal, they said, well, I didn't agree to that. I dispute that testimony. That testimony is not credible, and what this court said in saying that there was a sufficient factual basis for the entry of the plea, we assume for the sake of argument that a reasonable fact finder might accept their arguments and after a full trial, rule in their behalf. There is no requirement, however, that there be uncontroverted evidence of guilt. So, it's not just the defendant's admissions that can establish the factual basis. It's other proffered evidence, because the question is, did the district court have sufficient evidence from which it could find a violation? The test is not, did the defendant admit every single fact in an uncontroverted way? And so, I think that answers Your Honor's question about what to do, you know, him contending he wasn't a regular user in the face of other evidence from which the court could have inferred that he was, including the testimony of his friends. And I'll add this. I think it's particularly damning. This is indicative of habitual use, if there's anything. A casual, periodic user of controlled substances, I submit, would not smoke meth during the night, go to bed for a few hours and get up and smoke it again before 9 a.m. I mean, I think the district court was well within its rights to take that evidence coupled with all the other matrix of evidence before it and find there was enough to say that this was regular and ongoing. And with respect to the temporal proximity, I mean, it doesn't get tighter than the day of the arrest. And then you add to that his admissions when pressed by Judge Land that he did, in fact, use controlled substances while in the possession of the guns. And, in fact, in the written order denying the motion to withdraw at ECF-75, Judge Land, by my count, two or three different times says that, quote, in his plea colloquy, he admitted that he possessed firearms while unlawfully using controlled substances. I mean, that's the heartland of what the statute gets at, and that's what makes it facially constitutional under the Second Amendment. He says, and he says he admitted during the colloquy to the accuracy of the government's proffer, which included witnesses who would testify as to his regular drug use, his voluntary admissions. He was an unlawful user of controlled substances at the very time he possessed the firearms. That's page four of ECF. So, again, I want to get back to what is the standard of review the court is applying. And as to those factual determinations, I think the question is, did the district court abuse his discretion when, on those findings of fact, he found that this defendant couldn't properly be made aware of the charge? Certainly, when the precedent says, typically in a routine case, the reading of the indictment, this went well beyond that. When the prosecutor read the elements and he expressed some hesitancy about the serial number issue, Judge Land said, well, that's not an element of defense, but let's, we'll talk about that. Then he expressed some uncertainty about what possession meant under the law. Judge Land read him the jury instruction about what possession was. So, he was bending over backwards to make sure he understood the nature of the charge, the elements of the offense, but at no time did Mr. Gibson ever express any uncertainty about what it meant to be an unlawful user. He never said, hey, that's confusing to me. I don't understand. I think I want to put this to a jury. None of that. And in fact, when asked by the district court whether there was any reason the court should not accept your client's plea, my friend said, no, your honor, I feel like it's in his best interest. He says on page 16 he understands the charge. Then again on page 30, Judge Land circles back to this. This is a full 14 pages later in the transcript of the colloquy. You've indicated you understand the charge that the government makes against you in the one count superseding indictment. Is that correct? Do you understand the charge? Gibson, yes, sir. Now, I want to stress this too. Everything that Mr. Gibson said during the plea colloquy was, of course, said under oath and subject to a penalty of perjury. This court's cases say that under oath statements made by a defendant in a plea colloquy are accorded a strong presumption of truthfulness. Why? Because we don't want defendants making statements during a colloquy under oath and then turning around and saying, I didn't mean that. It wasn't true. I was confused. I didn't know what I was doing. The district court made a finding at page 35 of the plea colloquy transcript. Defendant is aware of the nature of the charge and the consequences of the plea. And then secondly, the plea is a knowing and voluntary plea supported by an independent basis in fact contained in each of the essential elements. Those are the fact findings of the district court. Those are subject to clear review and denying his motion to withdraw the guilty plea was neither arbitrary nor unreasonable. Unless there are further questions from the court, then we will rest on our breath. All right. Thank you very much. I just want to address some of the points that were made by the government. When the government states that Gibson did not ask specifically what is an unlawful user, that's because the district court had already explained to him what an unlawful user was, which was someone who did use a controlled substance at the time the firearm was in his home. To clean up the record, there is no evidence that Gibson smoked or admitted to smoking methamphetamine the morning of. That is repeated throughout the record of this case. But I want to make it clear that the government, the government included that in its proffer, right? It did, but the actual testimony. What testimony? There's no testimony in a Rule 11 plea colloquy. No, your honor. But the testimony of Agent Starr in the pre-trial motion that morning stated that when the government specifically asked him, did Gibson say to you that he smoked that morning? The Agent Starr said, no. I don't recall him saying anything about using drugs that morning. So that came through the government's proffer and was repeated in writing, but the actual testimony of Agent Starr when asked by the government, I know, but what are we supposed to do with that? I mean, well, the government, Mr. Gibson says he's going to enter a guilty plea based upon the way that the court is interpreting the statute. The court asked the government for a proffer. The government provides a proffer, and part of the proffer is that he smoked methamphetamine the night before and the morning of the arrest. And he doesn't specifically deny those two things. Well, your honor. What are we supposed to do with that? Sure. He, well, he didn't admit to everything in the proffer, as the court just pointed out. He actually questioned a few of the items of the proffer, but his focus really was on Judge Lane's ruling and the specific questions directed to him of what I need to know today is, did you use a controlled substance at some time while you had the firearms in your home? So even this court and Bernadine said that the court, the government's proffer alone isn't enough. There has to be actual evidence of use. And these confidential informants. I know, but that's in a sentencing context where it's disputed and the government has the burden of proving a sentencing enhancement, generally by a preponderance of the evidence. But here, at the change of plea hearing, the government can proceed by proffer, not by testimony. Yes, your honor. But the actual testimony that the court had from the agent was that that statement was not made when asked directly on point. Was that statement made? And so, and Agent Starr, of course, was under oath during his testimony. The response to law enforcement that morning by Gibson was that he dabbled. He didn't use it on a regular, ongoing basis. The 2019 traffic stop was not at his home. It was approximately 2 grams of methamphetamine possession, not impaired. He wasn't issued a DUI drug or any kind of impairment charge. The 2021 Narcam was an unknown substance outside of his home. And the testimony that the government relies on of all these friends that were going to testify, they were recorded and no charges were brought. There wasn't any evidence that the government proceeded on as far as someone that was dealing drugs or they didn't move forward on possessing the firearms at the time that he was impaired based on those audio recordings. What's your response to opposing counsel's contention that your client's guilty plea is waived, the as-applied challenge? Well, I disagree with that. In the government's brief, as well as the court's order denying the motion to withdraw, the court was very clear that he was holding the statute constitutional as to Gibson, as applied to Gibson. So, the district court repeated throughout its rulings that this was as applied to Gibson. And in my initial brief, we raised those issues and the government did not object to that at that time. The objection was raised two days ago. So, we believe without, because of the way the court phrased his denial and his interpretation is as applied, I don't believe that would be waived. Thank you. All right. Thank you both very much. Thank you. All right. Our next case.